This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40669**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**KAYDA D.,**

      Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Grace B. Duran, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**DECISION**

**BACA,** Judge.

**{1}** Child-Appellant K.D. appeals the children's court's judgment and disposition order (the Order). K.D. asks this Court to reverse the provision in the Order stating, "Prior to the expiration of the commitment and pursuant to [NMSA 1978, Section] 32A-2-23E [(2009)], the [c]ourt recommends that [Children, Youth and Families Department] CYFD provide [n]otice and [h]earing for an extension of the commitment for additional periods of one (1) year until the juvenile reaches the age of [twenty-one]." K.D. argues that the Delinquency Act of the Children's Code, NMSA 1978, Section 32A-2-19(B)(1)(c)

(2021), prohibits the children's court from ordering an automatic extension of long-term commitment at the beginning of her sentence. We determine that the children's court did not order an automatic extension of K.D.'s commitment and that the children's court's recommendation for CYFD to provide notice and hearing for an extension of the commitment is permissible under the statute. For the reasons set forth below, we affirm.

**BACKGROUND**

**{2}** We set out only the pertinent facts and law related to the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a nonprecedential expedited bench decision. *See* Rule 12-210(F) NMRA; *see also In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**{3}** K.D. was originally charged with first degree murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); conspiracy to commit first degree murder, contrary to NMSA 1978, Section 30-28-2 (1979); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); and conspiracy to commit tampering with evidence, contrary to Section 30-28-2 as a youthful offender. K.D. and the State subsequently entered a plea agreement where K.D. admitted the delinquent acts of tampering with evidence and conspiracy to commit tampering with evidence. The charges of first degree murder and conspiracy to commit first degree murder were dismissed pursuant to the terms of the plea agreement.

**{4}** Concerning the disposition that could be imposed by the children's court upon K.D. for these delinquent acts, the plea agreement provided: "The State will not seek adult sanctions, there are [n]o other agreements as to disposition. There are no agreements as to disposition." The plea agreement further provided that "[t]he maximum penalty for these charges is a two[-]year commitment to the custody of [CYFD], which can be extended by the [c]ourt until the child reaches the age of twenty-one." In the "Admission or No Contest Advice of Rights By Judge" portion of the plea agreement, the children's court certified that it informed K.D. of the maximum disposition she faced for the delinquent acts she was admitting. Paragraph two of this portion of the plea agreement provides that:

> The child understands the range of possible dispositions includes from probation to a maximum two[-]year commitment to the custody of [CYFD,] which can be extended by the [children's c]ourt until [K.D.] reaches the age of twenty-one.

The children's court confirmed that it reviewed this with K.D. by placing her initials in the space provided for next to this language.

**{5}** At the plea hearing on June 2, 2022, the children's court accepted and approved the plea agreement after determining that K.D. understood its terms and voluntarily

agreed to it. The children's court did not impose a disposition on K.D. at that time, choosing instead to hold the disposition hearing at a later date.

{6}     Prior to the dispositional hearing, K.D. submitted a memorandum in aid of sentencing, which requested that the children's court place her on probation for twenty-four months. On September 1, 2022, the children's court held the dispositional hearing and imposed on K.D. a long-term commitment of not more than two years in the legal custody of CFYD as a delinquent offender.

{7}     At the disposition hearing, the children's court acknowledged that although it could not impose a longer sentence, it strongly recommended, pursuant to Section 32A-2-19(B)(1)(b), that the commitment be extended until the age of twenty-one, stating that it would be appropriate in this case. Defense counsel objected on the grounds that the recommendation was not contemplated by the plea agreement. The children's court responded that the plea agreement provided that there were no agreements as to disposition and the extension would not be automatic as the statute provided for an extension of the commitment following notice and hearing. Defense counsel disagreed and stated that the notice and hearing for extension should be initiated only for cause and that he would be moving to withdraw the plea agreement. In the Order, the children's court included the following: "Prior to the expiration of the commitment and pursuant to [Section] 32A-2-23E, the [children's c]ourt *recommends* that CFYD provide [n]otice and [h]earing for an extension of the commitment for additional periods of one (1) year until [K.D.] reaches the age of [twenty-one]." (Emphasis added.) K.D. appeals.

## DISCUSSION

### Preservation

{8}     We first address the State's contention that K.D. failed to preserve her argument for appeal. Specifically, the State contends that below, K.D. argued that she was not subject to extension of the long-term commitment because that was not contemplated in the plea agreement. Now, on appeal, K.D. makes an altogether different argument. K.D. contends, on the other hand, that her argument was preserved by objection and that, nevertheless, preservation is not required because the children's court imposed an illegal sentence.

{9}     "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). "In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the

claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Id.*

**{10}** Upon review of the record, we conclude that K.D.'s arguments were preserved by the objections and argument she made at the disposition hearing.

**Extension of Long-Term Commitment**

**{11}** Turning now to the central issue on appeal, K.D. argues: (1) the children's court lacked authority to enter an automatic extension of the long-term commitment at the commencement of the disposition, and (2) the children's court lacked authority to recommend a hearing on extension of commitment at the beginning of the disposition. Whether the children's court has the authority to enter a recommendation for notice and hearing on an extension of commitment at the beginning of a child's disposition is a question of statutory construction, which this Court reviews de novo. *See State v. Adam M.*, 2000-NMCA-049, ¶ 5, 129 N.M. 146, 2 P.3d 883 (stating that "[t]he children's court's authority to impose a commitment is statutory").

**{12}** The Delinquency Act establishes three classifications of juvenile offenders: serious, youthful, and delinquent. *State v. Jones*, 2010-NMSC-012, ¶ 10, 148 N.M. 1, 229 P.3d 474; *see also* NMSA 1978, § 32A-2-3 (2019). "A child's placement in one of those three categories determines (1) which rules of procedure apply at trial, and (2) the potential post-adjudication consequences the child will face if the [s]tate proves its case." *Jones*, 2010-NMSC-012, ¶ 10. Under the Children's Code, *"[a] delinquent offender. . . is a child under the age of [eighteen] who is determined to have committed a delinquent act—an act that, if committed by an adult, would be a crime less serious than first[]degree murder or one of the enumerated offenses of a youthful offender." Id.* ¶ 12 (discussing Section 32A-2-3). "As a court of limited jurisdiction, the children's court is only permitted to do what is specifically authorized by the [children's c]ode." *State ex rel. Child., Youth & Fams. Dep't v. Paul G.*, 2006-NMCA-038, ¶ 15, 139 N.M. 258, 131 P.3d 108 (internal quotation marks and citation omitted). "In construing the [children's c]ode, we examine it in its entirety, reading each part to achieve a harmonious result." *Id.* (internal quotation marks and citation omitted). "When possible, we give effect to the clear and unambiguous language of the [children's c]ode." *Id.* (internal quotation marks and citation omitted). "If statutory language is ambiguous, however, we consider the legislative purpose behind the statute in conjunction with all the provisions of the children's code to resolve its meaning." *In re Ruben D.*, 2001-NMCA-006, ¶ 7, 130 N.M. 110, 18 P.3d 1063.

**{13}** We note that K.D was adjudicated as a delinquent offender. To the extent that K.D. argues that the children's court ordered an automatic extension of her commitment, we observe that this is unsupported by the record. Indeed, during the dispositional hearing, the children's court stated multiple times that the extension would not be automatic and that it was bound by the plea agreement and the delinquency statute.

**{14}** Additionally, the Order distinctly and unmistakably states that the court was merely recommending that CYFD give appropriate notice so that a hearing could be set to consider whether the commitment should be extended. The Order states: "Prior to the expiration of the commitment and pursuant to [Section] 32A-2-23E, the [c]ourt *recommends* that CFYD provide [n]otice and [h]earing for an extension of the commitment for additional periods of one (1) year until [K.D.] reaches the age of [twenty-one]." (Emphasis added.) Consequently, we cannot agree with K.D. that extension of her long-term commitment is a foregone conclusion or will automatically occur.

**{15}** We next consider K.D.'s second argument that the children's court lacks authority to recommend a hearing on extension of K.D.'s commitment at the beginning of the commitment. At the time of disposition, the children's court, pursuant to Section 32A-2-19(B), has several options for placement of the child including, but not limited to, a short-term and a long-term commitment. In either case, under 32A-2-19(B)(1), the children's court must "transfer legal custody [of the child] to [CYFD], an agency responsible for the care and rehabilitation of delinquent children, which shall receive the child at a facility designated by the secretary of [CYFD] as a juvenile reception facility. [CYFD] *shall* thereafter determine the appropriate placement, supervision and rehabilitation program for the child." (Emphasis added.) Section 32A-2-19(B)(1)(b) authorizes the court to enter a disposition of "a long-term commitment for no more than two years in a facility for the care and rehabilitation of adjudicated delinquent children" unless "the commitment is extended pursuant to Section 32A-2-23." The committing judge "may include recommendations for placement of the child." Section 32A-2-19(B)(1).

**{16}** Section 32A-2-23(E) provides that, prior to the expiration of a long-term commitment, and with notice and hearing, "the court *may* extend the judgment for additional periods of one year until the child reaches the age of twenty-one *if the court finds that the extension is necessary to safeguard the welfare of the child or the public safety*." (Emphases added.) "The [children's] code intended the court to tailor a disposition to the specific needs of a child, and the legislature implemented its intent by granting the court power to review a child's progress in the custody of CYFD at the end of a commitment period." *In re Ruben D.,* 2001-NMCA-006, ¶ 11.

**{17}** Section 32A-2-23(E) requires a finding that it "is necessary to safeguard the welfare of the child or the public safety." In *Adam M.*, this court discussed that in furtherance of the legislative purpose of rehabilitation, "the children's court must exercise its discretion over a long-term commitment at the end of the commitment, after reviewing a record of the child's performance while committed, instead of at the beginning when the court has less information before it." 2000-NMCA-049, ¶ 10. K.D. argues that the children's court's review function would have no meaning if the court could simply order extended commitment when it issues its disposition. As we concluded above, the record reflects that the children's court merely recommended and did not order, automatic extension of K.D.'s long-term commitment. Moreover, even if a hearing were held, commitment may not be extended absent the statutorily required

finding that "the extension is necessary to safeguard the welfare of the child or the public safety." Section 32A-2-23(E). Nor do we observe the mere recommendation to upset the balance between CYFD and the children's court as set forth by the statute because CYFD is not mandated to accept the recommendation of the children's court, and nothing in the Order issued by the children's court here prohibits CYFD from carrying out its statutory duties and responsibilities, including early release of K.D. on supervised release or parole before the conclusion of the two-year, long-term commitment. *See* NMSA 1978, § 32A-2-23.1 (2009).

{18}     The Order simply recommended that hearings for possible one-year extensions of the long-term commitment be held pursuant to the Children's Code. It did not order the automatic extension of the long-term commitment, thereby usurping CYFD's authority to "determine the appropriate placement, supervision and rehabilitation program for the child," Section 32A-2-19(B)(1), and it was entirely consistent with the committing judge's prerogative to "include recommendations for placement of the child" at the dispositional hearing. *Id.*

**CONCLUSION**

{19}     For the foregoing reasons, the judgment and disposition order is affirmed.

{20}    **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**