The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 3, 2025

**NO. S-1-SC-40347**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

Petitioner,

v.

**CALVIN T. JR.,**

Respondent,

**In the Matter of COREY T.,**

Child,

**COREY T.,**

Movant-Respondent,

v.

**PRESBYTERIAN HEALTH PLAN, INC.,**

Necessary Party-Petitioner,

and

**NEW MEXICO HUMAN SERVICES**

**DEPARTMENT,**

Necessary Party.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis E. DePauli, Jr., District Judge**

Children, Youth & Families Department
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

Apache County Attorney's Office
Conrad Friedly, Children's Court Attorney
St. Johns, AZ

for Petitioner

Mason and Isaacson, P.A.
Michael Andrew Venegas
Gallup, NM

for Respondent

Native American Disability Law Center, Inc.
Heather Hoechst
Alexis M. DeLaCruz
Farmington, NM

for Movant-Respondent

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. Purcell
Albuquerque, NM

for Necessary Party-Petitioner Presbyterian Health Plan, Inc.

New Mexico Human Services Department
John Robert Emery
Christopher T. Foster
Santa Fe, NM

for Necessary Party New Mexico Human Services Department

Disability Rights New Mexico
Jesse D. Clifton
Albuquerque, NM

Pegasus Legal Services for Children
Bette Fleishman
Albuquerque, NM

for Amici Curiae Disability Rights New Mexico and Pegasus Legal Services for Children

**OPINION**

**BACON, Justice.**

{1}     This case on interlocutory appeal requires us to consider the scope of Rule 10-121(B)(4) NMRA, which relevantly permits the children's court to join "any other person" as a party to a proceeding on allegations of neglect or abuse. Petitioner Presbyterian Health Plan, Inc. (PHP) challenges the children's court's grant under Rule 10-121(B)(4) of the emergency motion by Respondent Calvin T. (Child) to join PHP as a necessary party.

{2}     We hold a children's court determining joinder of a party under Rule 10-121(B)(4) must apply the standard in Rule 1-019(A)(1) NMRA of our Rules of Civil Procedure: "A person who is subject to service of process shall be joined as a party in the action if[] . . . in his absence complete relief cannot be accorded among those already parties." We direct the rules committee to amend Rule 10-121(B)(4) accordingly.

**I.     BACKGROUND**

{3}     The uncontested background facts here include that Child's neglect and abuse proceeding has been ongoing since he was taken into Children, Youth & Families Department (CYFD) custody at six years old in 2015, and that Child "has had multiple hospitalizations and experienced frequent disruptions in placement."

{4} Central to this appeal, Child's emergency motion to join both PHP as his managed care organization[1] and New Mexico Human Services Department (HSD) as necessary parties was filed on September 20, 2023. Child represented in the emergency motion he was told on September 19 by representatives of his acute care unit that "he was being recommended for discharge on September 21" and that "no treatment foster care placement ha[d] been identified." Uncontested by PHP, Child also represented in his emergency motion that treatment foster care—not acute care—had been clinically recommended in July of 2023.

{5} In the emergency motion, which relied on both Rule 1-019(A)(1) and Rule 10-121(B)(4), Child represented that he "cannot be granted complete relief . . . without [PHP] and HSD becoming parties to this matter because both [PHP] and HSD have legal obligations to the Child." Child argued that PHP and HSD are "necessary parties to the Child's abuse and neglect case" because they "have obligations to the Child to engage in discharge planning from [the acute care facility where he had been placed], to locate and provide medically necessary services to the Child, including [treatment foster care]." Child further represented that "full relief"

---

[1]Child misidentified his managed care organization in the emergency motion as Presbyterian Healthcare Services, which error has since been corrected. For clarity, we refer throughout to PHP.

included "his basic needs for housing and his mental health, behavioral and educational needs."

{6} PHP's response to Child's emergency motion included that Rule 1-019 was inapposite in the children's court, Rule 10-121 was the relevant rule of procedure, and Child held no contractual rights against PHP.

{7} At a November 14, 2023, hearing on the motion, the children's court asked Child's guardian ad litem the value of making PHP a party; the guardian ad litem asserted that joinder would "ensure oversight" to address Child's needs and create an "efficient forum" for all parties to address all concerns. The hearing discussed Rule 10-121 and did not include discussion of Rule 1-019.

{8} The children's court granted Child's emergency motion on December 4, 2023, in a brief order. Regarding HSD, the order specified that "[c]onsistent with Rule 10-121(B)(4) and the *Kevin S. v. Blalock* litigation in which HSD is a named defendant, HSD is a proper party under the Children's Code." *See Kevin S. v. Blalock*, No. 1:18-

CV-00896 (D.N.M. June 30, 2023);[2] NMSA 1978, § 32A-1-1 (1995) ("Chapter 32A NMSA 1978 may be cited as the 'Children's Code.'").

{9} Regarding PHP, the district court order stated, without explanation, that "[t]he MCO [managed care organization] (PHP) is a proper party under [Rule] 10-121(B)(4)," directed that PHP is a necessary party, and certified joinder of PHP as an issue for interlocutory appeal under NMSA 1978, Section 39-3-4 (1999). Otherwise, the order refers to the joined parties as a "proper party" or "necessary parties," without reference to Rule 1-019.

{10} PHP's timely interlocutory appeal was denied by the Court of Appeals. We granted PHP's petition for writ of certiorari.

**II.     DISCUSSION**

{11} We begin by construing the interlocutory question itself, which the children's court's order did not provide and which the parties present variously and steeped in

---

[2]In settling, "The Parties agree that . . . [PHP et al.] need to take a greater role in coordinating Treatment Foster Care . . . placements," of which "determination (approval/denial/modification/reduction/delay) will be tracked by CYFD and HSD." *Kevin S.*, No. 1:18-CV-00896, Corrective Action Plan at 4 (June 30, 2023), https://klvg4oyd4j.execute-api.us-west-2.amazonaws.com/prod/PublicFiles/0bafda a4e38b4b6292f0c68ed362e88d/92a1fd4a-3f62-4696-822f-35623512bcab/2023%2 0Kevin-S.%20Corrective%20Action%20Plan (last visited June 13, 2025).

4

the facts of the case.[3] Interlocutory appeals from a district court, of which the children's court is a division,[4] are governed by Section 39-3-4(A), which relevantly provides that

> when the district judge makes an interlocutory order or decision which does not practically dispose of the merits of the action and he believes the order or decision *involves a controlling question of law as to which there is substantial ground for difference of opinion* and that an immediate appeal from the order or decision may materially advance the ultimate termination of the litigation, he shall so state in writing in the order or decision.

(Emphasis added). Under Section 39-3-4(A), then, the question here must "involve[] a controlling question of law" rather than address issues of fact. *Cf. State v. Groves*, 2021-NMSC-003, ¶ 2, 478 P.3d 915 ("The sole issue before the Court in this

---

[3]In its petition, PHP presented the following question: "Does Rule 10-121(B) authorize the children's court to join 'any person' as a party to neglect or abuse proceedings over the person's objection, even when the person has no custodial relationship with the child and no legal responsibility for his welfare, and even when the party seeking joinder has no actionable claims against the person?"

In its brief in chief, PHP asks (1) "[whether] Rule 10-121 extend[s] the joinder power of the children's court to literally 'any . . . person'" (omission in original) and (2) "whether the children's court had authority to join an abused and neglected child's health insurer as a party to the [children's] court's proceedings, over the insurer's objections."

Child, noting the Children's Code's "best interests of the child" standard and the children's court's "discretion to make decisions to further those interests," asserts "[t]he proper characterization of the issue is whether . . . Rule 10-121(B) allows the [c]hildren's [c]ourt to make PHP, the Child's MCO, a party to the pending abuse and neglect case where the Court finds it to be in the best interests of the child."

[4]*See* NMSA 1978, § 32A-1-5(A) (1993) ("There is established in the district court for each county a division to be known as the children's court.").

5

interlocutory appeal is whether aggravated fleeing a law enforcement officer . . . may serve as a predicate felony to support a charge of felony murder.").

{12}    Weighing the context of the children's court's order and the parties' arguments here against that standard, we construe the interlocutory question as follows: What limiting principle, if any, should apply to Rule 10-121(B)(4) for a children's court determining joinder?

**A.    Standard of Review**

{13}    Because this question regarding joinder requires us to construe our own rules, our authority is plenary and our review is de novo. *Ammerman v. Hubbard Broad., Inc.*, 1976-NMSC-031, ¶ 15, 89 N.M. 307, 551 P.2d 1354 (stating this Court's "inherent power to regulate all pleading, practice, and procedure" emanates from "[o]ur constitutional power under N.M. Const. art. III, § 1 and art. VI, § 3 of superintending control over all inferior courts" (internal quotation marks and citation omitted)); *State v. Serna*, 2013-NMSC-033, ¶ 14, 305 P.3d 936 (describing our authority to regulate procedure through rule-making as plenary); *Tipton v. Texaco, Inc.*, 1985-NMSC-108, ¶ 14, 103 N.M. 689, 712 P.2d 1351 (discussing federal joinder rules of procedure); *In re Michael L.*, 2002-NMCA-076, ¶ 7, 132 N.M. 479, 50 P.3d 574 ("We review construction of children's court rules and statutes de novo." (citations omitted)). In construing our rules, "[w]e begin by examining the

plain language of the rule as well as the context in which it was promulgated, including the history of the rule and the object and purpose." *State v. Lopez*, 2023-NMSC-011, ¶ 10, 529 P.3d 893 (internal quotation marks and citation omitted); *see id.* ("When construing our procedural rules, we use the same rules of construction applicable to the interpretation of statutes." (internal quotation marks and citation omitted)).

**B.      A Limiting Principle Is Necessary to Avoid Absurd Results**

{14}      We begin by resolving the conditional phrase within our question regarding joinder of persons as parties in a children's court—*if any* limiting principle need be applied under Rule 10-121(B)(4). As we explain, because we agree that the Rule's "any other person" applied without limitation could have absurd results, we conclude a limiting principle is warranted.

{15}      Rule 10-121(B) provides in full,

> In proceedings on petitions alleging neglect or abuse or a family in need of court-ordered services, the parties to the action are
> (1)      [CYFD];
> (2)      a parent, guardian, or custodian who has allegedly neglected or abused a child or is in need of court-ordered services;
> (3)      the child alleged to be neglected or abused or in need of court-ordered services; and
> (4)      *any other person* made a party by the court.

(Emphasis added.) It takes little scrutiny to discern, as the children's court did here, that the plain language of Rule 10-121(B)(4) is so broad as to offer no obvious limitation.

{16} If unconstrained, this plain language, as Child recognizes, "could have the 'absurd' result of bringing in parties that have no relationship with or serve no purpose in [a child's] life." That is, while the language of the statute is unambiguous, Child concedes that, if not limited, it may give rise to absurdity, at least in specific instances. *See State v. Montano*, 2024-NMSC-019, ¶ 14, 557 P.3d 86 (recognizing "specific absurdity" and "general absurdity"). In reply, PHP argues through hypotheticals that absurdity could result even if *some* relationship or purpose exists: joinder of a bank for access to additional financial resources; joinder of a child's girlfriend to enjoin her from moving away, if supported by a therapist's testimony regarding emotional harm; and joinder of a foster home to require a child's admission. We agree that joinder scenarios such as these would be absurd under our holding in *Montano*, in which we stated that "we will reject the literal application of a statute as absurd when the result is an outcome that contradicts the values of rationality, reasonableness, and common sense." 2024-NMSC-019, ¶ 19. We, therefore, conclude there is a legitimate question as to the scope of Rule 10-121(B)(4). For the reasons that follow, we continue to hold that Rule 10-121(B)(4)

8

must be applied to serve the best-interests-of-the-child standard and to effectuate the Children's Code.

{17} New Mexico has a strong tradition and policy of serving the best interests of the child. *See Diamond v. Diamond*, 2012-NMSC-022, ¶ 47, 283 P.3d 260; *Sanders v. Rosenberg*, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144. Accordingly, "[i]t is undisputed that the children's court is vested with broad and inherent powers to accomplish the results contemplated by the [Children's Code]." *State v. Steven B.*, 2004-NMCA-086, ¶ 17, 136 N.M. 111, 94 P.3d 854 (internal quotation marks and citation omitted); *see* NMSA 1978, § 32A-1-3(A) (2009) (declaring that legislative purposes of the Children's Code include "first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code and then to preserve the unity of the family whenever possible[, where a] child's health and safety shall be the paramount concern"). In explaining "our state's [relevant] public policy," this Court in *Diamond* recognized our "well-settled law that when a case involves children, the trial court has broad authority to fashion its rulings in the best interests of the children. In legal matters concerning minors, the rule of best interests of the children

is essentially equitable." 2012-NMSC-022, ¶ 47 (text only)[5] (citations omitted). "When dealing with children, the district court is exercising its equitable powers. The touchstone of equity is that it is flexible; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." *In re Adoption of Francisco A.*, 1993-NMCA-144, ¶ 17, 116 N.M. 708, 866 P.2d 1175 (internal quotation marks and citation omitted). Such strong policy interests weigh against limiting the children's court's joinder power.

{18} However, notwithstanding these considerations, we also recognize that the children's court is a court of limited jurisdiction and that it thus applies the best-interests standard only in adjudicating in the particular context of the Children's Code. *See State ex rel. CYFD v. Paul G.*, 2006-NMCA-038, ¶ 15, 139 N.M. 258, 131 P.3d 108 ("As a court of limited jurisdiction, the children's court is only permitted to do what is specifically authorized by the [Children's] Code." (internal quotation marks and citation omitted)). For example, our Court of Appeals recounted cases in which the best-interests standard has been applied by children's courts to

---

[5]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

custody determinations, visitation determinations, and determining whether grandparents had standing in an adoption proceeding. *In re Adoption of Francisco A.*, 1993-NMCA-144, ¶¶ 14-15. We also apply the best-interests standard in cases implicating youth treatment plans pursuant to an abuse or neglect proceeding, such as this one. *See State ex rel. CYFD v. Eric E.*, 2024-NMCA-026, ¶¶ 21-22, 36-38, 544 P.3d 307 (reviewing CYFD's treatment plan and other active efforts to serve the child's best interests); *Diamond*, 2012-NMSC-022, ¶ 49 (regarding emancipation issues, "[t]he critical inquiry remains the best interests of the minor"). It follows that, while the scope of the Children's Code is broad, *see* NMSA 1978, §§ 32A-1-1 to -28-42 (1993, as amended through 2025), the children's court does not require unlimited joinder to serve the best-interests standard and effectuate the purposes of the Children's Code. In other words, applying a limiting principle to Rule 10-121(B)(4) to avoid absurd results does not create an inherent conflict with the interests served by the children's court.

{19} In sum, Rule 10-121(B)(4) applied without a limiting principle could have absurd results, and the universe of parties which the children's court must join to effectuate the Children's Code is not infinite. Consequently, we conclude a limiting principle is warranted for the Rule.

11

**C.** **Rule 1-019 of Our Rules of Civil Procedure Provides the Proper Limiting Principle for Rule 10-121(B)(4)**

{20} We begin by considering the parties' arguments as they relate to an appropriate limiting principle for "any other person" in Rule 10-121(B)(4).

{21} PHP relevantly argues that "'any other person'" should be applied narrowly in light of the context of the Rule, by application of the canon of ejusdem generis: "where general words follow words of a more specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *State v. Nick R.*, 2009-NMSC-050, ¶ 21, 147 N.M. 182, 218 P.2d 868 (internal quotation marks and citation omitted). Under this principle, PHP argues that a managed care organization is not *of the same kind or class* as the enumerated parties in Rule 10-121(B)(1)-(3)—CYFD; a parent, guardian, or custodian accused of neglect or abuse; and the child. PHP characterizes that statutory set of parties as an "itemization of the intimate circle of proper participants in an abuse or neglect proceeding," in contrast to a managed care organization such as PHP. While this is a reasonable argument, it does not provide a useful principle of limitation, as it does little to clarify an analysis of a children's court under Rule 10-121(B)(4). Where the unique circumstances of a neglect or abuse case lead to a motion for joinder of an unforeseen entity, a limiting principle for Rule 10-121(B)(4) may help the children's court distinguish among

12

different parties who are outside the enumerated set of participants. But PHP's assertion that a managed care organization is not like the enumerated parties does not resolve whether such an entity *could* be joined under the Rule without the Rule running afoul of the absurdity doctrine.

{22} Child primarily argues that while "any other person" is indeed broad, the plain language of Rule 10-121(B)(4) also includes "made a party by the court," which should be read to limit joinder "to those parties the [court] determines necessary to further the best interests of the [c]hild, based on the child's unique circumstances and needs." Child suggests this reading abides with legislative intent for the Children's Code by empowering the children's court to exercise discretion to join parties necessary to serve the best-interests standard.

{23} We agree that Rule 10-121(B)(4) should allow such discretion by the children's court in order to effectuate the Children's Code. Limiting joinder under the Rule to those parties necessary to serve the child's best interests precludes absurd results while ensuring the ability of the children's court to join such necessary parties in unique or unforeseeable circumstances. Drawing on this principle, we turn to our Rules of Civil Procedure, wherein Rule 1-019(A)(1) articulates the necessary-party standard, i.e. the standard for joinder of persons needed for just adjudication: "A person who is subject to service of process shall be joined as a party in the action

13

if[] . . . in his absence complete relief cannot be accorded among those already parties." For this standard to fulfill the purposes of Rule 10-121(B)(4) as discussed, the *complete relief* sought for a child also would have to satisfy the children's court's objective to serve that *child's best interests*. Given the nature of neglect and abuse proceedings, we conclude the Rule 1-019(A)(1) standard sets a proper bar for incorporation into Rule 10-121(B)(4): the set of parties necessary to afford complete relief sought in such proceedings will include those parties necessary to serve the best interests of the child.[6] While we recognize the standard we announce might preclude joinder in some cases of parties who would serve the best interests of the child to some degree, we conclude the requirement that "any other person" be a necessary party for according complete relief is a reasonable one that balances the relevant interests. Consequently, we direct the rules committee to amend Rule 10-121(B)(4) to incorporate the necessary-party standard in Rule 1-019(A)(1). We

---

[6]We note PHP's citation of *State ex rel. CYFD v. Djamila B.*, in which we stated that "Rule 1-019 . . . does not govern children's court cases concerning the Children's Code." 2015-NMSC-003, ¶ 39, 342 P.3d 698 As emphasized above, however, our amendment of Rule 10-121(B)(4) adopts the *standard* in Rule 1-019(A)(1) but does not adopt the *rule* itself, and so our holding creates no dissonance with *Djamila B.* Additionally, *Djamila B.* concerned joinder of a kinship-guardian under Rule 10-121(B)(2), not "any other person" under Rule 10-121(B)(4). *See* 2015-NMSC-003, ¶ 39. Thus, our clarification in *Djamila B.* warned against misapplying Rule 1-019 to an enumerated statutory party and did not address the scope of Rule 10-121(B)(4).

14

emphasize that our amendment imports Rule 1-019(A)(1)'s standard but not the rule itself, thus otherwise leaving in place our rules and jurisprudence in this area of law.[7] *See, e.g.*, Rule 10-101(A)(1)(a)(iv) NMRA (providing that abuse and neglect proceedings are governed by the Children's Court Rules); *contra* Rule 10-101(A)(5) (providing that all proceedings not specified otherwise are governed by "the Children's Code and the Rules of Civil Procedure for the District Courts").

{24}     We note that PHP argued hypothetically about the application of Rule 1-019 in this context, asserting that *necessary parties* under Rule 10-121(B)(4) would mean "persons against whom the proponent of joinder has a claim" based on the joined party's legal obligations to the child. In effect, the parties have agreed on this principle, arguing under the facts as to whether PHP owed legal obligations to Child sufficient to meet this standard. On remand, the children's court will need to determine whether those purported legal obligations or other evidence constitutes a basis for PHP to be a necessary party by applying the Rule 1-019(A)(1) standard within the context of Rule 10-121(B)(4).

---

[7]We additionally note our holding should not be read to empower the children's court to grant relief to a child in such proceedings that would circumvent any required administrative appeals process.

### III. CONCLUSION

{25} For the reasons stated, we resolve the interlocutory issue by amending Rule 10-121(B)(4) to adopt the standard in Rule 1-019(A)(1) and remanding for the children's court to apply this standard. We direct the rules committee to amend Rule 10-121(B)(4) in accordance with this opinion.

{26} **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**

16